## Commonwealth v. Standard Oil Company.

(Decided November 14, 1922.)

### Appeal from Lewis Circuit Court.

1. Inspection—Violation of Inspection Laws—Oils.—Where kerosene or coal oil shipped in a tank car to the appellee in this state, upon being received by the latter and before its removal from the tank car, was inspected by an authorized inspector of the state and found suitable for illuminating purposes, and immediately thereafter pumped from the tank car into a reservoir on the premises of the appellee, unmixed with other oil; the sale by the latter of fifty gallons of the oil, drawn from the reservoir, to a local merchant of the same town and its delivery to him at his store in

metal cans, the property of appellee, from which it was emptied into a tank of the merchant and the cans retained by the appellee and returned to its oil depot, the failure of the latter to have the oil inspector inspect the oil in the cans and brand them with his name, official character and the words: "Approved fire test," before the delivery to the local merchant of the oil contained therein, was not a violation of the provisions of sections 2202, 2205, 2206 or 2208, Kentucky Statutes.

2. Inspection—Oils.—Under the agreed facts of this case the inspection of the oil made by the inspector before it was pumped from the tank car into the appellee's reservoir, was sufficient and the only inspection of it required by the statute; and the requirement of section 2208, as to the branding of the "barrels, casks or packages containing the same," applies only where such receptacles are actually delivered with their contents to the purchasers, with the intention or knowledge that the latter will use them in subsequent dealings or trade.

3. Inspection—Oils—Branding.—The sole object of the statute as to branding being to protect the consumers of the oil, it is obvious that no such end would be attained by the branding of the receptacles containing the previously inspected oil sold in this case, which never left the appellee's possession, or would be seen by any subsequent purchaser of the oil from the local merchant.

CHAS. I. DAWSON, Attorney General, THOS. B. McGREGOR, Assistant Attorney General, and J. P. STROTHER for appellant.

HUMPHREY, CRAWFORD & MIDDLETON and WORTHINGTON, BROWNING & REED for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This penal action was brought in the court below by the Commonwealth of Kentucky seeking to recover of the Standard Oil Company, incorporated, a fine for an alleged violation by it of the provision of section 2208, Kentucky Statutes. The latter's defense to the offense charged was presented by the formal entering of a plea of "not guilty," following which, by consent of the parties, the case was submitted for trial, without the intervention of a jury, to the court, upon the petition, plea of not guilty and an agreed statement of the facts bearing on the issues involved. By the judgment rendered, the Standard Oil Company was declared not guilty of the offense charged and the petition dismissed. From that judgment the Commonwealth was granted and is now prosecuting this appeal.

Briefly stated, the offense charged in the petition is that on October 28, 1919, the appellee by its agent, G. P. Adams, in Lewis county: "Did unlawfully sell and de-

liver to Chas. W. Hammond, a merchant within the state, 50 gallons of kerosene oil, a liquid product of petroleum, contained in 10 metal cans or packages, without first having same inspected by an authorized inspector of the state of Kentucky and each of the 10 cans containing the same branded, or marked, by said inspector with his name, official character and the words 'approved fire test,' in violation of section 2208 of the 1915 edition of Carroll's Kentucky Statutes.''

It will be observed from the foregoing averments of the petition that the appellee is charged with two delinquencies: (1) Failure to have the oil sold Hammond inspected; (2) failure to brand or mark the containers in which the oil sold Hammond was delivered; each of which, it is insisted for the Commonwealth, amounted to a violation of section 2208, of the statute, *supra,* which provides:

''If any person or persons in this state shall use or sell to merchants or consumers within this state, any of the oils or fluids specified in section 2202, without first having the same inspected by an authorized inspector of this state, and the barrels, casks or packages containing the same branded or marked as provided in section 2206, said person or persons so offending shall be punished by a fine of twenty dollars for each barrel, cask or package of oils or fluids aforesaid so used or sold to merchants or customers within the state without same being inspected and branded. Fifty per cent of the penalty recovered shall go to the inspector in lieu of his fees, and the balance to the state.''

The oils or fluids required by the provisions of the section, *supra,* to be inspected are specified in section 2202, the test for making the inspection indicated in section 2205, and the manner of branding, after inspection, the casks or packages containing such oils or fluids for sale, or when sold, is prescribed by section 2206, all of the same act.

The question first proper to consider is whether the appellee failed, as charged, to comply with the statutory requirements respecting the inspection of the oil. Regarding this matter it is sufficient to say that it appears from the agreed statement of facts that the oil in question was a part of a shipment received by the appellee at Vanceburg in a tank car; upon the arrival of the car at that town a gallon of the oil was drawn from the tank by an agent of the appellee and by him immediately

taken to the nearby office of the county oil inspector, who at once inspected and tested it as required by the process or test prescribed by section 2205 of the statute, *supra,* and found it suitable for illuminating purposes, the use for which it was designed. Upon the completion of its inspection by the county inspector and his immediate report to appellee's agent of the favorable result thereof, the latter pumped from the car tank containing the shipment of oil the whole of its contents into a large reservoir on appellee's adjacent premises, and it was from the oil thus pumped into this reservoir from the tank car that the appellee subsequently sold and delivered the fifty gallons of oil to Hammond, a merchant of Vanceburg.

It is contended by counsel for the appellant that while the inspection of the gallon of oil drawn by appellee's agent from the car tank for that purpose was made by an authorized inspector of the state as required by section 2202 of the statute, and in the manner prescribed by section 2205, and also demonstrated by the inspection that it was entitled to be classed as illuminating oil of "approved fire test' and sold as such for illuminating purposes, as provided by section 2206 of the statute, nevertheless there was never any legal inspection of the oil sold and delivered Hammond by the appellee, because the inspector did not himself draw from the tank car the oil he inspected, or inspect it while in the reservoir on the appellee's premises, or in the cans by which the fifty gallons it sold Hammond was delivered to him. In response to this contention it may be said that the statute does not appear to require that the inspection or test shall be made as insisted by the appellant. Undoubtedly the oil had to be inspected before its sale to or use by appellee's customers, by an authorized inspector of the state according to the method of testing it prescribed by the statute. But only one inspection was required by the statute, and as it conclusively appears from the agreed statement of facts that such inspection was actually made by the county inspector of the oil contained in the tank car before it was pumped therefrom into the reservoir on appellee's premises, by which it was ascertained to be up to the standard required for illuminating purposes, this fact, together with the further admitted facts that the oil thus inspected was unmixed with other oil while in the car tank or when pumped therefrom into the reservoir on

appellee's premises, or before the delivery to Hammond of the fifty gallons sold him from the contents of the reservoir by appellee, would seem sufficient to remove any doubt that the inspection of the oil in question, as made by the county inspector, met the requirements of the statute. It would have been more regular for the inspector to have drawn from the car tank the oil he subjected to inspection, rather than permit it to be drawn therefrom by the appellee's agent, but that it was done by the latter cannot render illegal the inspection actually made by that officer in accordance with the test prescribed by the statute, in view of the admitted fact that the oil sold and delivered Hammond, though drawn from the appellee's reservoir, was a part of the oil that was actually inspected by the county inspector before its removal from the tank car and sale to Hammond.

As declared in Standard Oil Co. v. Castleman, 151 Ky. 663, construing certain of the provisions of the statute, *supra,* other than those involved in the case at bar:

"The manifest purpose of the act is to protect the consumers of oil. Therefore, it requires its inspection before it is used or consumed, and even before it is sold to merchants or individual consumers."

We concur in the conclusion of the trial court, that the inspection made in the instant case of the oil in question substantially met the requirements and subserved the purpose of the statute.

Consideration of the appellant's further contention, that the failure of the appellee to have inspected and branded or marked by the inspector with his name and official character and the words, "approved fire test," the several containers or casks in which the oil sold Hammond was delivered, was a violation of section 2208 of the statute, *supra,* convinces us that it too is untenable. It follows from the conclusion as to the sufficiency of the inspection made of the oil while in the tank car, above expressed, that another inspection of it when, or after, it was put in the casks by means of which it was delivered to Hammond, was unnecessary. But whether the casks should have been branded as claimed remains to be determined. It appears from the agreed statement of facts that following the inspection of the oil and after it was pumped into the appellee's reservoir from the tank car, the fifty gallons sold Hammond by appellee was drawn from the reservoir and transported in ten metal cans to his place of business nearby in Vanceburg,

where the oil was poured or emptied from the cans into a metal tank, owned by Hammond and used as a receptacle for such oil. The cans in which the oil was delivered were not sold to Hammond with the oil delivered, neither did they, even temporarily, remain in the possession of Hammond, nor did he use, or sell from the cans to customers any of their contents. The cans remained the property of appellee and in the possession of its employe by whom the oil was delivered to Hammond, and were when emptied of their contents returned by the appellee's employe to its depot and possession. In the state of case presented we do not think the branding of the cans, as claimed by the appellant, was necessary. The requirement of the statute as to the branding of the "barrels, casks, or packages containing the same" (i. e., the oil) evidently applies only where such receptacles are actually delivered with their contents to purchasers, with the intention or knowldege that the latter will likely use them in subsequent dealings or trade. The sole object of the provision of the statute as to branding being to protect consumers of the oil, it is obvious that no such end would be attained by the branding of the receptacles thereof which never left the appellee's possession or would be seen by any subsequent purchaser of the oil from Hammond.

Obviously, if oil is sold in any barrel, cask or package for delivery in that form to the purchaser, it would be necessary that such barrel, cask or package be branded as required by the statute. But where, as in this case, the oil is not sold in such receptacles, but from a reservoir at the oil depot of the seller, the contents of which had previously been duly inspected, and casks were used merely as a means of conveying the oil to the nearby place of business of the purchaser, a local merchant, where it is emptied in a tank of the latter and the casks retained by the seller, we find nothing in the provisions of the statute requiring the branding of the casks so used. Indeed, to hold that branding of the casks in such case is necessary would in effect declare that, if at any time, a purchaser of oil presents himself at appellee's place of business with a single can, his own property, which he procures to be filled at an agreed price with oil drawn from the appellee's reservoir, it would be the duty of the latter to brand, or cause to be branded, the can in the manner specified by the statute, although previous to its sale the oil may have been inspected by

the county inspector. Such cannot be the meaning of the statute. As in our opinion the interpretation claimed for the statute, *supra,* by the appellant's counsel, is unwarranted by its letter or spirit, the judgment of the circuit court dismissing the petition is affirmed.